## DEPARTMENT OF HUMAN SERVICES

v.

## Raymond R. ROY.

Supreme Judicial Court of Maine.

Argued Nov. 13, 1990.
Decided Jan. 29, 1991.

---

**814**

David R. Burtt, Jr. (orally), Asst. Atty. Gen., Augusta, for plaintiff.

Paul F. Macri (orally), Valerie Stanfill, Berman, Simmons & Goldberg, Lewiston, for defendant.

Before McKUSICK, C.J., and WATHEN, GLASSMAN, CLIFFORD, COLLINS and BRODY, JJ.

GLASSMAN, Justice.

Raymond R. Roy appeals from the judgment entered in the Superior Court (Androscoggin County, *Alexander, J.*) affirming the judgment of the District Court (Lewiston, *Scales, A.R.J.*) for the Department of Human Services (DHS), in an action brought to determine Roy's paternity of a minor child and to establish a support obligation on the part of Roy for the child. *See* 19 M.R.S.A. §§ 271–516 (1981 & Supp. 1990). We reject Roy's contentions that the court erred in determining Roy's share of the total amount of past public assistance expended by the DHS on behalf of Roy's minor child, *see* 19 M.R.S.A. § 495 (Supp.1990), and in concluding that (i) the past public assistance debt is joint and several for either responsible parent and (ii) Roy's present ability to pay the past debt is immaterial to the calculation of Roy's share of that indebtedness. Finding no error or abuse of discretion, we affirm the judgment.

In 1985, the DHS sought to recover the past public assistance expended in the form of Aid to Families with Dependent Children (AFDC) payments on behalf of the minor child of Raymond Roy and Karen St. Hilaire. Because neither parent had custody

of the child at the time AFDC payments were made, the DHS was entitled to pursue reimbursement of past public assistance from either or both parents. *See* 19 M.R.S.A. § 496. By a separate administrative proceeding pursuant to 19 M.R.S.A. § 498, to which Roy was not a party, the DHS determined the portion of the past public assistance debt attributable to Karen St. Hilaire.[1]

In November 1986, the DHS filed suit against Roy in the District Court for a determination of his paternity, for the collection of Roy's share of past public assistance expended on the child's behalf and for the establishment of a current support order for the child, all pursuant to 19 M.R.S.A. §§ 271–516. During the course of a DHS enforcement agent's testimony at trial, two blue seal documents prepared by the custodian of the DHS records were produced. Both documents reported that the DHS was currently spending $326 per month in AFDC payments on behalf of Roy's minor child. The first document admitted in evidence, dated May 9, 1989, reported total arrearages of $34,276 for the past public assistance expended since November 1980. The second document admitted in evidence, dated March 22, 1989, reported an assistance figure of $26,689 for the period since November 1980.[2] Although Roy objected to the admission of the first document, neither party objected to the admission of the second document. The DHS support enforcement agent could not explain why the two totals for the past public assistance differed by $7587 when, with the current assistance of $326 per month, a maximum of $652 should have been expended by the DHS in the intervening one and one-half month period. No other evidence, either documentary or testimonial, was presented as to the amount owed to the DHS.

After the close of the DHS's case, Roy moved for a directed verdict on the ground that the DHS failed to meet its burden of proof on the amount of the past debt owed by Roy. The court ruled:

> With respect to this situation, the evidence that I have received is of two sorts, two amounts. They are inconsistent and I think that the Court has the prerogative and the duty to determine that inconsistency against the State. There is no reason that has been offered to disregard any arrears, and I deny your motion.

Using the assistance figure of $26,689 contained in the second blue seal document, the court added Medicaid payments made by the DHS on behalf of Trina ($5616.66), the cost of a blood test ($150), and three monthly AFDC payments ($978) for the period between March 1989 and the date of the trial in this matter. From this total of $33,433.66, the court subtracted the $9200 obligation of St. Hilaire and entered an order for the DHS for $24,233.66 as the amount of the past debt attributable to Roy. Roy appealed to the Superior Court. After a hearing, the Superior Court affirmed the judgment of the District Court, and this appeal by Roy followed.

■■■ Roy does not challenge the court's finding regarding his paternity of his minor child nor the amount of his current child support obligation. His challenge to the judgment focuses on his contention that the two blue seal documents produced by the DHS, constituting the sole evidence of the amount of past public assistance expended on behalf of his minor child, were mutually and facially inconsistent, and ac-

---

1. The DHS support enforcement agent, called as a witness for the DHS in the present proceedings, testified that although the hearing report of the administrative proceeding to fix the amount of St. Hilaire's portion of the past public assistance furnished on behalf of the child reflected that amount as $6900, the correspondence between the office of the Attorney General and counsel for Roy showed the amount of $9200 as being the obligation of St. Hilaire. The court adopted the latter amount in determining Roy's obligation.

2. Under 19 M.R.S.A. § 273, a father is only liable for payments made for education and necessary support of his minor child for a period of six years preceding the commencement of the suit and for all expenditures from the commencement of the suit until the entry of judgment. The present action was commenced on November 20, 1986. Accordingly, Roy could be found liable for all expenditures by the DHS on behalf of the child from November 21, 1980 through June 22, 1989.

cordingly, the trial court had no principled basis for determining that the second blue seal document was an accurate statement of that debt. We disagree.

■■■ When, as here, the Superior Court acts as an intermediate appellate court, we directly review the trial court's findings. *Williams v. Williams,* 444 A.2d 977, 978 (Me.1982). We will disturb the findings of the District Court only if they are clearly erroneous. *Department of Human Servs. v. Hulit,* 524 A.2d 1212, 1213 (Me.1987). 19 M.R.S.A. § 495 provides that "[a] payment of public assistance for the benefit of the dependent child creates a debt due the department by any responsible parent in the amount of the public assistance paid." The DHS has the burden to establish both the existence and the amount of that debt.[3] In *Department of Human Servs. v. Hulit* we recognized that a blue seal document, which constitutes a summary of arrearages compiled as part of the DHS's regular course of business, is generally admissible and can satisfy the DHS's burden to establish both the existence and amount of the debt. *Id.* at 1215–16.[4] The documents would be inadmissible only if there are "circumstances indicat[ing] a lack of trustworthiness." M.R.Evid. 803(8)(B).

In *Joy v. Marston,* 581 A.2d 418 (Me. 1990), we affirmed the trial court's directed verdict in favor of the defendant hospital and physicians because, on the crucial fact of whether they had warned Marston of the danger of driving with a patch over an injured eye, Marston's testimony, as the sole witness on this issue, was not only riddled with inconsistencies but he testified that "he didn't know whether he had been warned [and] did [not] know of any reason why the jury should believe one of his stories rather than another." *Id.* at 420. We concluded that in such a "highly unusual case" the "only rational conclusion that could be drawn from Marston's testimony was that he did not know whether he had been warned," and a jury verdict based on such testimony would amount to mere speculation. *Id.*

Here, unlike in *Joy,* the court rationally could find that the only unexplained inconsistency in the two blue seal documents was for that period between March 22, 1989 and May 9, 1989 and that such inconsistency indicated a "lack of trustworthiness" of the first blue seal document, dated May 9, 1989, sufficient for the court to refuse to consider it in determining the amount paid by the DHS for the support of Roy's child. The court was presented with no circumstances, however, that would cast doubt on the trustworthiness of the second blue seal document, dated March 22, 1989, and admitted in evidence without objection. Accordingly, we find no clear error in the trial court's determination that the second blue seal document reliably reflected the amount paid by the DHS between November 1980 and March 22, 1989 for support of Roy's child.

We find no merit in Roy's other contentions concerning the calculation of his portion of the past public assistance debt. Section 495 clearly provides for the *joint and several* liability of "any responsible parent" for the *full debt* owed to the Department. Further, unlike the statutory process specified for the calculation of *current* child support obligations, the debtor-parent's ability to pay the past debt is not a relevant factor for consideration when calculating the liability of a responsible parent under section 495. *Cf.* 19 M.R.S.A. § 498(4)(C) (criteria for calculation of periodic payment of current support obligation).

The entry is:

Judgment affirmed.

All concurring.

---

**3.** Pursuant to 19 M.R.S.A. § 498(2) (Supp.1990), the Department's notice to the parent prior to the administrative hearing must include "[a] statement of the debt accrued or accruing under section 495."

**4.** The court admitted the evidence under an exception to the hearsay rule as "records ... of a public office or agency setting forth its regularly conducted and regularly recorded activities." M.R.Evid. 803(8)(A).