1998 ME 159

Marilyn MASON et al.

v.

Susan TORREY et al.

Supreme Judicial Court of Maine.

Argued Oct. 6, 1997.

Decided June 19, 1998.

David J. Corson (orally), Elizabeth Mooney, Yarmouth, for plaintiffs.

Eric E. Wright (orally), Martha C. Gaythwaite, Friedman, Babcock & Gaythwaite, Portland, for Torrey and Emergency Medical Assoc.

Daniel Rapaport (orally), Elizabeth A. Olivier, Preti Flaherty, Beliveau & Pachios, L.L.C., Portland, for defendant Mid Coast Hospital.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

DANA, Justice.

[¶ 1] Marilyn Mason, individually and as personal representative of the estate of Julia Ayer, and Charles Ayer appeal from the judgment of the Superior Court (Sagadahoc, *Cole, J.*) denying their claim for professional negligence against Susan Torrey, M.D., Mid Coast Hospital (MCH), and Emergency Medical Associates (EMA). Mason contends that the court erred by not providing the jurors with the instructions we articulated in *Irish v. Gimbel,* 1997 ME 50, 691 A.2d 664, by allowing Torrey to display an enlargement of the screening panel's findings, and by labeling Torrey and two other doctors who testified on her behalf as expert witnesses. We affirm the judgment.

[¶ 2] Julia Ayer died from a ruptured aortic aneurism on July 13, 1990, after being sent home following what Mason alleges was

a misdiagnosis by Torrey. On May 31, 1995, Mason filed a claim in the Superior Court alleging professional negligence by Torrey, EMA, and MCH.[1] Pursuant to 24 M.R.S.A. § 2854 (1990) Mason presented the claim to a prelitigation screening panel, the members of which determined unanimously that Torrey, MCH and EMA were not negligent in Ayer's treatment.

[¶ 3] Despite this finding Mason proceeded to file suit in the Superior Court against those parties for professional negligence. An enlargement of the panel's findings was used during trial and the actual findings were entered in evidence. Three expert witnesses testified on behalf of Torrey, including Torrey herself, Pamela Bensen, M.D. and Phelps Carter, M.D. Judgment was entered on the jury verdict in favor of Torrey, MCH and EMA.

[¶ 4]Mason's primary contention is that the court erred by failing to give to the jury the instructions we articulated in *Irish.* In *Irish* we reviewed the constitutionality of 24 M.R.S.A. § 2857(1)(B) (1990),[2] which permits admission without explanation of unanimous panel findings in a subsequent court action for professional negligence. We held that in order to guarantee the right to a jury determination promised in Article I, section 20 of the Maine Constitution certain neutral information must be provided to the jury when panel findings are admitted. *Irish,* 1997 ME 50, ¶ 12, 691 A.2d at 671.[3] We construed "the statute to permit the disclosure of information about the prelitigation screening process sufficient to provide a rational basis for evaluation of the findings and to ensure the jury's role as the final arbiter of the facts." *Id.* at ¶ 13, 691 A.2d at 671.

[¶ 5] Mason did not object to the court's preliminary comments or final instructions to the jury concerning the prelitigation screening process. Pursuant to M.R.Civ.P. 51(b), "[n]o party may assign as error the giving or the failure to give an instruction unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which the party objects and the grounds of the objection." Despite this rule, we have employed an obvious error standard in some civil settings to vacate a judgment when the appealing party failed to object at trial "only if the error was of the exceptional

---

1. Torrey worked in the MCH emergency room and was an employee of EMA.

2. 24 M.R.S.A. § 2857 (1990) provides in relevant part:
   **1. Proceedings before panel confidential.** Except as otherwise provided in this section and section 2858, all proceedings before the panel, including its final determinations, shall be treated in every respect as private and confidential by the panel and the parties to the claim. No findings or other writings of the panel, nor any evidence or statements made by any party or his representative during a panel hearing may be admissible or otherwise submitted or used in any way for any purpose in any subsequent court action or any other public disclosure made, unless otherwise agreed by the party who made the statement or presented the evidence. If the findings of the panel are:
   . . .
   **B.** As to either question under section 2855, unanimous and unfavorable to the claimant, the findings, without explanation, shall be admissible in any subsequent court action for professional negligence against the person accused of professional negligence by the claimant based on the same set of facts upon which the notice of claim was filed.

3. In *Irish* we stated that the following information, provided to the jury during preliminary comments and final instructions, will enable the jury to perform its function:
   1) the panel process is merely a preliminary procedural step through which malpractice claims proceed;
   2) the panel in this case consisted of (the name and identity of the members);
   3) the panel conducts a summary hearing and is not bound by the Rules of Evidence;
   4) the hearing is not a substitute for a full trial and may or may not have included all of the same evidence that is presented at the trial;
   5) the jury is not bound by the finding(s) and it is the jurors' duty to reach their own conclusions based on all of the evidence presented to them; and
   6) the panel proceedings are privileged and confidential. Consequently, the parties may not introduce panel documents or present witnesses to testify about the panel proceedings, and they may not comment on the panel finding(s) or proceedings except to reiterate the information in 1 through 6.

   *Id.*

kind that seriously affected the fairness, integrity, or public reputation of the proceedings." *Harris v. PT Petro Corp.*, 650 A.2d 1346, 1349 (Me.1994) (citation omitted).

■ [¶ 6] Mason argues that the claimed error must constitute obvious error because it is constitutionally based. In most cases even constitutional error must be preserved for appellate review and unpreserved constitutional error must be subjected to the same obvious error review as we apply to all unpreserved error. *See State v. Eastman*, 1997 ME 39, ¶ 14, 691 A.2d 179, 183–84; *State v. Jones*, 580 A.2d 161, 163 (Me.1990).

■ [¶ 7] In the context of civil proceedings, "constitutional decisions may be limited so as to have only future effect." *Cranston v. Commercial Chem. Corp.*, 324 A.2d 301, 304 n. 6 (Me.1974) (citations omitted). We decline to apply *Irish* retrospectively in cases in which the claim of error was not preserved. Because the court rendered its judgment prior to our decision in *Irish*, and because the court's instructions comported with the prevailing law at that time, *see Sullivan v. Johnson*, 628 A.2d 653, 656 (Me. 1993), the court's instructions do not constitute obvious error.

[¶ 8] No other issues raised by Mason require discussion.

The entry is:

Judgment affirmed.

LIPEZ, Justice, dissenting.

[¶ 9] I must respectfully dissent. In *Irish v. Gimbel*, we stated that the lack of relevant neutral information about the prelitigation panel process "in the face of the highly prejudicial findings invited unprincipled evaluation and can only result in juror confusion." *Irish*, 1997 ME 50, ¶ 11, 691 A.2d at 670. We further stated that the preliminary comments and final instructions to the jury we required in *Irish* provide a basis for the jury to understand the nature of the panel findings and to put the findings in context in evaluating all of the evidence presented at the trial. In short, the purpose of the screening statute will be preserved, the jury's fact-finding role will be preserved, and plaintiffs' right to a jury trial will be protected.

*Id.* at ¶ 12, 691 A.2d at 671. Those comments and instructions found essential in *Irish* were largely missing here. The import of that absence is unmistakable. Although we used the language of constitutional necessity rather than obvious error in *Irish*, we ruled as we did because the absence of the relevant neutral information was an error "of the exceptional kind that seriously affected the fairness, integrity, or public reputation of the proceedings." *Harris v. PT Petro Corp.*, 650 A.2d at 1349 (citation omitted).

[¶ 10] There are no countervailing considerations that require us to retreat from that conclusion here. The claims in these medical malpractice cases raise difficult and important issues. The unanimous findings of a prelitigation screening panel, without the relevant neutral information required by *Irish*, overwhelm all of the other evidence in a malpractice case. There are a limited number of malpractice cases in the same posture as this case. We should not penalize plaintiffs who did not anticipate the change in the law announced in *Irish*. We should apply *Irish* retrospectively in this case and vacate the judgment.